IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

GEORGE OCHOA,                    )
                                 )
        Petitioner,              )
                                 )
vs.                              )        Case No. CIV-12-1313-R
                                 )
ANITA TRAMMELL, Warden,          )
    Oklahoma State Penitentiary, )
                                 )
        Respondent.              )

MEMORANDUM OPINION AND ORDER

Petitioner is scheduled to be executed on Tuesday, December 4, 2012.[1]  On November

28, 2012, counsel filed on Petitioner's behalf a *Petition for Writ of Habeas Corpus by a*

*Person in State Custody Pursuant to 28 U.S.C. § 2254* (Dkt. No. 1), and a *Motion for Stay*

*of Execution Pending Consideration and Disposition of Petition for Writ of Habeas Corpus*

*by a Person in State Custody Pursuant to 28 U.S.C. § 2254* (Dkt. No. 2).  Petitioner asserts

in his Petition that Oklahoma's procedure to ensure that insane persons are not executed is

unconstitutional, and that he is presently insane and that his execution would violate the

Eighth and Fourteenth Amendments.  Respondent filed her *Response in Opposition to*

*Petition for Writ of Habeas Corpus* (Dkt. No. 11), and her *Objection to Petitioner's Motion*

*for Stay of Execution* (Dkt. No. 12) on November 30, 2012, to which Petitioner filed his

---

[1] Petitioner was convicted and sentenced for the 1993 murders of Francisco Morales and his wife, Maria Yanez.

Reply on that same date.  Respondent responds that Petitioner's claims are unexhausted and requests this Court to deny the Petition on the merits for the reasons that Oklahoma's procedure is constitutional and that Petitioner has not demonstrated that he is insane for the purposes of avoiding his execution.

Petitioner's claims are unexhausted.  Under Oklahoma law, it is the Warden who, when he or she has good reason to question a petitioner's sanity, initiates a state court proceeding.  Because the Warden has determined that Petitioner is sane, no state court proceeding has been initiated and Petitioner has not filed any state action challenging her decision.  This fact does not, however, prevent this Court from reviewing his claims, as "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).  The Court will, therefore, reach the merits of Petitioner's claims.[2]

In Ford v. Wainwright, 477 U.S. 399 (1986), the Supreme Court held that "[t]he Eighth Amendment prohibits the State from inflicting the penalty of death upon a prisoner who is insane." Id. at 410.  A prisoner's sanity to be executed must be judged as to his present mental state when execution is imminent. Stewart v. Martinez-Villareal, 523 U.S. 637, 644-45 (1998).

> Under Ford, once a prisoner makes the *requisite preliminary showing* that his current mental state would bar his execution, the Eighth Amendment,

_____

[2]  For the purposes of the disposition of the instant case, the Court need not address the parties' arguments of whether or not a Writ of Mandamus is an available state remedy in Oklahoma regarding its statutory procedures for whether a person is competent to be executed.

applicable to the States under the Due Process Clause of the Fourteenth Amendment, entitles him to an adjudication to determine his condition. These determinations are governed by the substantive federal baseline for competency set down in <u>Ford</u>.

<u>Panetti v. Quarterman</u>, 551 U.S. 930, 934-35 (2007)(emphasis added). Thus, a prisoner must first make the necessary preliminary showing of his incompetency to be executed before he is entitled to an adjudication to determine his condition.

<u>Ground 1:</u>     <u>Constitutionality of Oklahoma's Competency to be Executed Statute.</u>[3]

Petitioner claims Oklahoma's competency to be executed procedure does not comply with the Eighth and Fourteenth Amendments' bar against the execution of an incompetent person as identified in <u>Ford</u>. Oklahoma's procedure for determining whether a person is competent to be executed is set out in statute:

> If, after his delivery to the warden for execution, there is good reason to believe that a defendant under judgment of death has become insane, the warden must call such fact to the attention of the district attorney of the county in which the prison is situated, whose duty is to immediately file in the district or superior court of such county a petition stating the conviction and judgment and the fact that the defendant is believed to be insane and asking that the question of his sanity be inquired into. Thereupon, the court must at once cause to be summoned and impaneled from the regular jury list a jury of twelve persons to hear such inquiry.

Okla. Stat. tit. 22, § 1005.

In <u>Ford</u>, Ford's counsel invoked the procedures of Florida law governing the determination of the competency of a condemned inmate. Following those procedures, the

---

[3]  For the purposes of this Opinion, the terms "competency" and "sanity" will be used interchangeably by the Court.

Governor appointed a panel of three experts to evaluate whether Ford had "'the mental capacity to understand the nature of the death penalty and the reasons why it was imposed upon him.'" <u>Ford</u> at 403-04 (statutory citation omitted).  The experts interviewed Ford together at a single thirty (30) minute meeting and then each filed individual reports with the Governor.  The reports had three different diagnoses, but all agreed that Ford was competent or sane as defined by state law.  Absent any further opportunity for Ford's counsel to present additional evidence or argument, the Governor signed the death warrant for execution without explanation or statement. <u>Id.</u> at 404.[4]

On certiorari review to determine the issue of whether the Eight Amendment prohibited the execution of the insane and whether the district court should have had a hearing on the petitioner's claim of competency, the Supreme Court found that the most striking defect in Florida's statutory procedures was the State's placement of the decision of competency in the executive branch, and more specifically, in the hands of the Governor, whose subordinates were responsible for every stage of the prosecution, and who appointed the experts and made the final determination whether the State would be able to carry out the execution. <u>Id.</u> at 416.

Petitioner claims Oklahoma's statutory procedure unconstitutionally places his fate entirely with the Warden and, further, does not provide for recourse from the Warden's

---

[4] Ford's attorneys thereafter unsuccessfully sought a hearing in state court to determine his competency, and then filed a petition for habeas corpus in District Court seeking, among other things, an evidentiary hearing.  The petition was denied.  On appeal, the Court of Appeals addressed the merits of the appeal and a divided panel affirmed the denial of the writ.

decision.  He asserts the Warden is no different than the Governor in <u>Ford</u> – that she is an executive officer, a party to the habeas lawsuit, and the person charged with carrying out his execution.  He contends the Warden's function of whether there is "good reason to believe" an inmate under sentence of death has become insane is equivalent to the Governor's ultimate decision power criticized in <u>Ford</u>.

Under <u>Ford</u>, the State "may properly presume that petitioner remains sane at the time sentence is to be carried out, and may require a *substantial threshold showing of insanity* merely to trigger the hearing process. *Cf.* <u>Ake v. Oklahoma</u>, 470 U.S. 68, 82-83, 105 S. Ct. 1087, 1096, 84 L.Ed.2d 53 (1985)." <u>Ford</u> at 426 (POWELL, J., concurring in part and concurring in the judgment)(footnote omitted)(emphasis added).  Apart from the State's allowed presumption of sanity, other reasons exist sufficient to recognize the necessity of a high threshold preliminary showing of sanity: "It may be that some high threshold showing on behalf of the prisoner will be found a necessary means to control the number of nonmeritorious or repetitive claims of insanity. *Cf.* <u>Pate v. Robinson</u>, 383 U.S. 375, 387, 86 S. Ct. 836, 843, 15 L.Ed.2d 815 (1966)(hearing on competency to stand trial required if "sufficient doubt" of competency exists)." <u>Id.</u> at 416-17 (footnote omitted).

Petitioner has not shown that Oklahoma's statute regarding sanity to be executed is on its face unconstitutional.  As discussed above, <u>Ford</u> also involved a preliminary showing of insanity before the Florida sanity determination procedures were initiated and applied.[5]

---

[5] Further, in <u>Panetti</u>, it was uncontested that the petitioner had made a substantial showing of incompetency. 551 U.S. at 948.

Contrary to Petitioner's assertions, Oklahoma's threshold showing of insanity by the Warden differs from the sanity determination procedure in Ford found to be unconstitutional by the Supreme Court.  The Warden is not making the sanity determination.  Instead, the Warden must believe there is good reason that Petitioner is insane, at which time a sanity jury trial is initiated and evidence and testimony is allowed to be presented to a jury of twelve persons. Unlike Ford, the jury is the decision maker in Oklahoma.

The Supreme Court in both Ford and Panetti recognized that the states may require a threshold determination merely to trigger a hearing process, and that such threshold showing might necessarily be high in order to winnow out and control the number of repetitive and non-meritorious claims.   Petitioner has not shown Oklahoma's procedure utilizing the Warden in the threshold determination to be unconstitutional or contrary to Supreme Court precedent.

Nor has Petitioner demonstrated the statute as applied to him is unconstitutional.  On November 20, 2012, Petitioner's counsel sent a letter to the Warden expressing his "concerns" about Petitioner's mental status, and setting forth Oklahoma's statute detailing the Warden's duty, and providing Oklahoma's case law on the definition of insanity for the purposes of execution.  Attached to the correspondence was: (1) a report dated November 18, 2010, by investigator Gordon Bulla (summarizing his visit with Petitioner and detailing incidents during the conversation of Petitioner hearing voices and repeatedly stating that he was being shocked); and (2) copies of the Oklahoma Department of Corrections' Mental Health or Mental Status Reviews of Petitioner, dating from January 20, 2011, to October 30,

2012.  What was absent, however, was any report by a qualified and licensed mental health professional regarding any tests, observations or opinions pertaining to Petitioner's current mental state.[6]   Counsel followed this letter to the Warden with a second letter dated November 27, 2012, restating their concerns and requesting a response explaining what the Warden had done to look into the matter and how she planned to proceed.

On November 29, 2012, the Warden responded by letter, stating that she had conducted an interview with Petitioner on that same date, that he stated he understood the execution process and understood the meaning of execution, that he was aware he was convicted of murder and his punishment was death, and that he understood when his execution was to occur.  She conveyed that Petitioner also stated he should not be executed since he was being "shocked" and that it caused burns to his skin.  She concluded that based on her interview with Petitioner and consultation with her staff, she did not find good reason to believe Petitioner had become insane under the state statute. (Reply, Exhibit 1)[7]

---

[6]   Counsel asserts that on November 10, 2012, Dr. Shawn Roberson – retained to test Petitioner in support of his clemency proceeding – attempted to examine Petitioner, but that Petitioner refused to complete the psychological instruments and testing. (Pet. at 19)

[7]   In her affidavit, Janna Morgan, PhD, clinical coordinator and mental health authority at Oklahoma State Penitentiary, stated that she has assessed Petitioner on several occasions since April 20, 2012, and most recently on November 29, 2012.  She reports that although Petitioner stated he would like to stop being shocked, he denied any thoughts of self-harm and denied any hallucinations.  He further stated he was aware he was to be executed next Tuesday.  She found Petitioner to be calm and cooperative, of good hygienic appearance, and to demonstrate normal speech and eye contact.   She also found him oriented to person, place, time, and situation. (Response, Exhibit B)  Although Dr. Morgan is an employee of the state prison, the Court is unaware if she was one of the "staff" consulted by the Warden.

Petitioner has not demonstrated Oklahoma's procedure is violative of <u>Ford</u>.  As <u>Ford</u> and <u>Panetti</u> specify, Petitioner must make a preliminary showing of incompetency.  This is not the same as the procedure for determination of competency condemned in <u>Ford</u>.  <u>Ford</u> does not mandate to whom the preliminary showing must be made, only that it may be a substantial threshold in order to winnow out non-meritorious or repetitive claims.  Nor has he demonstrated that he has made a substantial preliminary showing of incompetency to be executed.  As such, Petitioner cannot demonstrate that the Warden's decision was an abuse of discretion or that Oklahoma's statutory procedure was unconstitutionally applied to him.  Accordingly, Petitioner's first ground for relief is denied.

<u>Ground 2:</u>     <u>Competency to be Executed</u>.

In his last ground for relief, Petitioner asserts that he is currently incompetent, and that his execution while incompetent would violate his Eighth and Fourteenth Amendment rights.  As stated earlier, before Petitioner may be afforded the Constitutional protections provided by <u>Ford</u>, he must first make a preliminary showing that his current mental state would bar his execution. <u>Panetti</u>, 551 U.S. at 934-35.  The Eighth Amendment forbids the execution of those who are not aware of the punishment they are about to receive and why they are to suffer it. <u>Ford</u>, 477 U.S. at 422.  Until he has made the requisite preliminary showing of insanity, the State may presume Petitioner is sane at the time his sentence is to be carried out. <u>Id.</u> at 426.

In support of this ground for relief, Petitioner's counsel claim that Petitioner has a long history of "psychotic behavior", visual and auditory hallucinations, and a belief that he

is being shocked by unknown persons.  They state that he believes he is not responsible for the murders.  They further add that his writings are delusional, that he believes he is being persecuted by the victim's family members, that he can no longer communicate effectively with counsel, and that he expresses an irrational understanding of the judicial process at this point. (Pet. at 26.)

Petitioner does not support this claim with an expert opinion.  He offers only the records of Oklahoma Department of Corrections' Mental Health or Mental Status Reviews of Petitioner and a reference to the affidavit of Janna Morgan, Ph.D., attached as Exhibit "B" to Respondent's Response.  Although the Status Reviews reference reports of Petitioner stating he was being shocked, hearing people in the "chases" behind his cell, and kicking his toilet, they also inform – especially the most recent review dated October 30, 2012 – that Petitioner was not disoriented to place or time, did not present any psychotic features, or exhibit any signs of depression, deficits in memory, or incoherency.  The affidavit of Janna Morgan, Ph.D. echoed these assessments of Petitioner when she met with him on November 29, 2012. <u>See</u> fn 7, <u>supra</u>.

Petitioner personally addressed the Clemency Board at his clemency hearing held on November 16, 2012.  A DVD of this portion of the hearing was attached as Exhibit "A" to Respondent's Response.  Petitioner's counsel assert that Petitioner's testimony demonstrates a denial that he committed the murders and that such denial is evidence he is not factually aware of why he is to be executed.  Contrary to this assertion, however, Petitioner was directly asked by one of the Board members if he realized he would be executed for the

9

murder of two people, to which he responded that he was aware.  Petitioner directly asked for clemency from the board in order to stop the execution and so that he may maintain his relationship with his family and continue to develop a newly formed relationship with his nineteen-year-old daughter.  He expressed an understanding of how difficult everything had been for the victims' families and for the mother of his daughter.  Contrary to the assertions that he is unable to communicate with his attorneys, he instead expressed some dissatisfaction with his attorney, explaining he had been attempting to communicate with him but that he did not receive any response to his requests.  When asked by a Board member if he remembered meeting with his attorneys the Saturday before the clemency hearing, Petitioner acknowledged that he did remember, correcting the Board member that the meeting had occurred on a Thursday instead of a Saturday.

The exchanges between Petitioner and the Board members demonstrate to the Court that Petitioner was aware of the clemency process and of the impending consequences should clemency be denied.  Although it may be possible that he suffers from delusions of being electrocuted, his answers to direct questions were coherent, responsive, and displayed an understanding of the process and of his impending fate.  This impression of Petitioner's mental state is supported by the opinions of Dr. Morgan in her affidavit and by the Mental Status Reviews routinely conducted over at least the last year by mental health professionals employed by the penitentiary.  Most importantly, this determination by the Court is not contradicted by any expert opinion of a mental health professional.

After careful consideration of the pleadings, their attachments, and arguments of

counsel, the Court finds that Petitioner has not demonstrated to a reasonable satisfaction a threshold showing of insanity, much less that he is insane for the purposes of his execution under the standards of <u>Ford</u>.  The law presumes that Petitioner will be competent at the time of his execution, and this presumption has not been overcome by the evidence presented. Accordingly, his second ground for relief is denied.

After a complete review of the briefs filed by Petitioner and Respondent, the attachments thereto, and the applicable law, the Court finds Petitioner's request for relief in his *Petition for Writ of Habeas Corpus by a Person in State Custody Pursuant to 28 U.S.C. § 2254* (Dkt. No. 1) should be denied.  ACCORDINGLY, habeas relief is DENIED on all grounds.  An appropriate judgment will be entered.

IT IS SO ORDERED this 3rd day of December, 2012.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE